JAMES I. WOOTEN, TRUSTEE OF CECIL C. WOOTEN, v. E. H. HOBBS AND WIFE, HELEN R. HOBBS, ET ALS.

(Filed 10 November, 1915.)

**1. Wills—Interpretation—Intent.**

Where the language used by the testator in writing his will clearly and explicitly expresses his intent as to the disposition of his property, the intent, as thus gathered, is controlling, and nothing is left open to construction. The rules for interpreting a will discussed by WALKER, J.

**2. Wills—Named Devisees—Survivors—Lapsed Devises—Descent and Distribution.**

Where there is a legacy or devise in a will to certain children of the testator, then in being, by name, and any of them die before the testator, those living will not take the share of the deceased one, as survivors, but the legacy or devise will lapse, and go, as property undisposed of by the testator, to the latter's next of kin, unless otherwise provided by statute, or unless other disposition thereof be made by the will.

**3. Wills—Interpretation—Children—Named Devisees—Codicil—Revocation—Entire Interest.**

A devise of lands to several of the testator's children by name, for life, with direction that if one or more of "my said children shall die without

leaving child or children or issue of such, then his or ·their share or shares to the surviving child or children of such for life in the same manner as the original shares therein." By codicil, the testator revoked the devise to one of his children, C., "expressly withdrawing and recalling . . . the entire interest devised to him," and devising the same to his other children, naming them, for life, "subject to the same and identical rights, privileges and provisions as to the survivorship and limitations over," etc. L., a son, died without child since the death of the testator. *Held*, the devise to the testator's children was not to them as a class, but individually, the interest of C., described in the codicil, being the entire interest in the devise, whether original, vested or contingent, which, in express terms, goes to the other of the testator's named children, who come within the terms of the devise to them.

APPEAL by plaintiff from order of *Bond, J.*, heard at chambers on 18 October, 1915; from GREENE.

Controversy without action to determine title to land, submitted to the Court, under Revisal, sec. 803, for its decision and judgment.

Simeon Wooten died in Lenoir County, leaving a last will and testament, duly admitted to probate, and in the tenth item thereof he devised his land in Greene County as follows: "I loan to my six children, Leonard E. Wooten, Helen R. Hobbs, Mary V. Peele and John S. Wooten, Cecil C. Wooten, and Lester D. Wooten, for and during their natural lives, with the right to enjoy the same and to receive the rents and profits regularly accruing therefrom, my lands situate in the county of Greene, State of North Carolina, known as the William I. Wooten place, containing about five hundred acres, and the Rachel Moye tract, lying near the same, containing about one hundred and sixty acres. It is my desire, and I direct, that if my said children shall desire to hold during their lives their respective shares in said lands in severalty, that they shall have the right to do so by partition of the same. If one or more of my said children shall die without leaving child or children him or her surviving, or issue of such child or children surviving, then in that event I loan and direct that the share or shares of him or her or them dying without child or children or issue of such child or children, shall go to and remain in the possession during their lives of my surviving child or children, to be holden by them during their lives in the same manner as the original shares therein under this my will. At the death of such of my children, one or more, as shall die leaving child or children surviving or issue of such child or children surviving, I give and devise said lands, including the original shares loaned by this my will, and also any and all addition thereto, by survivorship, ·to his or her child or children so surviving, to have and to hold to them, the said surviving child or children, the respective share or shares of their several parents, and their heirs, in fee simple forever."

By the first item of a codicil to his will he revoked this devise as to his son, Cecil C. Wooten, in the following terms: "It is my will that

my son, Cecil C. Wooten, shall have no interest in my Greene County lands, known as the William I. Wooten place, containing about five hundred acres, and the Rachel Moye place, containing about one hundred and sixty acres, and I do hereby expressly withdraw and recall from my said son, Cecil C. Wooten, the entire interest which I devised to him in said Greene County lands in item tenth of my said will. In accordance with my desire I loan the said interest intended for my said son, Cecil C. Wooten, in said item to my other five children, Leonard E. Wooten, Helen R. Hobbs, Mary V. Peele, John S. Wooten and Lester D. Wooten, for and during their natural lives, subject to the same and identical rights, privileges and provisions as to survivorship and limitations over as are specifically prescribed and set forth in said tenth item."

Since the death of Simeon Wooten, his son, Leonard E. Wooten, has died intestate and without children, having never been married. James I. Wooten, trustee of Cecil C. Wooten and plaintiff in this action, contends that his *cestui que trust* takes an equal interest with his brothers and sisters above named in that part of the two tracts of 500 acres and 160 acres devised by the tenth item of the will to Leonard E. Wooten, now deceased, upon the ground that the codicil does not deprive him of any interest in said land originally devised to his brothers and sisters, or either of them, but only revokes the devise of said land originally made to him; while defendants contend that the codicil not only revokes the devise of an interest in the land originally made to Cecil C. Wooten, but its legal effect is to deprive him of any and every interest whatsoever, either vested or contingent, in the land described in item ten of the will, and therefore he acquired no interest therein by the death of Leonard E. Wooten, and that no interest either original or accrued passed to Cecil C. Wooten, because of the said codicil.

The case states: "The purpose of this controversy without action is to ascertain the interest, if any, of the said Cecil C. Wooten, in the two tracts of land mentioned in the tenth item of the will of the said Simeon Wooten, which two tracts of land are situated in Greene County, and are those mentioned in item first of the codicil of the said Simeon Wooten; and the purpose of this controversy is limited to said inquiry."

The judge ruled that the children of the testator, Helen R. Hobbs, Mary V. Peele, John S. Wooten and Lester D. Wooten, share equally in the portion of the land devised to Leonard E. Wooten under the tenth item of the will, and the first item of the codicil thereto, said land being the William I. Wooten place, containing 500 acres, and the Rachel Moye place, containing 160 acres, and that James I. Wooten, as trustee of Cecil C. Wooten, has no interest of any kind, either vested or contingent upon survivorship, in the land mentioned in the tenth item of the will and the first item of the codicil, the same being the land

known as the William I. Wooten tract of 500 acres and the Rachel Moye tract of 160 acres, and judgment was rendered accordingly, from which the plaintiff appealed, assigning as error the above two rulings.

*L. L. Levinson for plaintiff.*
*Loftin, Dawson & Manning for defendants.*

WALKER, J., after stating the case: Where the meaning of the testator or other maker of a written instrument is not plainly expressed, we must resort to construction in order to ascertain the intention, but when there is no uncertainty in the language used and it expresses a clear and definite purpose, construction is not necessary. It has been said by one of the standard text-writers that "the will of a competent testator, and every part thereof, presumably expresses an intelligible intent; *i. e.,* means something. When the language, in view of all the circumstances, can have but one meaning, there is no room for uncertainty. Construction is the method employed to ascertain the intent of the testator, as expressed in the will, when the language used to that end is susceptible, under the circumstances, of more than one meaning. Its sole function is to remove uncertainty regarding testamentary intent." Gardner on Wills, 364. Where construction is called for, the intention must be gathered from the will itself, as read, in view of all the facts and surrounding circumstances, and certain rules have been adopted as aids in the construction of the will, their sole aim being to disclose the testator's intent as embodied in the language of the will. The writing, in which the will must be expressed, contains the only testamentary intention that the law will effectuate. This intention must be found within the four corners of the instrument or nowhere. Hence extrinsic evidence is inadmissible to show an intent not contained in the document itself. But when the will is such as to call for construction, the court, with a view to securing a proper construction, puts itself, so far as may be, in the position of the testator, that it may see things from his point of view. To this end, evidence regarding all relevant facts and circumstances surrounding the testator at the time of executing the will is admissible. Gardner on Wills, pp. 383, 385. Wigram on Wills, 142. It may be well to say that persons named specifically in a will, that is, by name or other personal and particular designation, do not generally take as a class, but individually. *Todd v. Trott,* 64 N. C., 283.

It was said in *Mebane v. Womack,* 55 N. C., 301, "Had the will given the property to the children of Frances McAden, without naming them, then they could have taken as a class only, but, by naming them, they became legatees individually," citing with approval what is said by the *Lord Chancellor* in *Knight v. Gould,* 2 Myl. and Keene Rep., 295, to this effect: "A bequest to children living at the testator's

death is on all hands admitted to be a bequest to the class, and it survives to those who shall answer the description by surviving the testator, but it is said the words 'hereinafter named' are added, and that these words added to a bequest to 'children' would make the description cease to be that of a class. Assuredly it would, because such words are used for the very purpose of specifying certain of the children, and therefore they must specifically exclude the supposition of a class being intended." We may profitably add one or two more authorities which come nearer to the question we have under consideration: "As a general rule only those persons can participate as survivors in a gift who are specifically included in the designation made in the will or answer the conditions annexed to the gift, and persons expressly excluded cannot share as survivors under other general conditions or designation in the will. The survivors, however, can only share in such property as is included by the will in the gift to survivors. In the absence of language showing a contrary intention, the share of a deceased beneficiary in case of survivorship will be divided among the survivors in equal shares." 40 Cyc., at p. 1509. It has been uniformly held with us that when a legacy or devise is given to certain persons then in being by name, and any of them die before the testator, those living will not take his share, as survivors, but the legacy or devise will lapse, and go, as property undisposed of by the testator, to the latter's next of kin, unless otherwise provided by statute or unless other disposition thereof be made by the will or a codicil, or in the absence of contrary provisions in the will. *Sawyer v. Trueblood,* 5 N. C., 190; *Barnes v. Shannonhouse,* 29 N. C., 9; *Johnson v. Johnson,* 38 N. C., 426; *Hinton v. Lewis,* 42 N. C., 184; Gardner on Wills, pp. 441 to 455. Keeping these principles in mind, we do not think the meaning of the will in question will be hard to find. The intention of the testator is clearly expressed in the paper-writing, and, therefore, there is no room for doubt or construction; but if the language may fairly be regarded as even somewhat ambiguous, an interpretation of it, by the ordinary rules applicable in such cases, would not alter our view as to what the testator intended. As Leonard E. Wooten died without having married, the matter is much simplified. It is plain that the testator intended to give the property to his children, not as a class, but individually, as he called them by their names, and each one took his share subject to the further provision in the event of any one or more of them dying without leaving child or children. If there had been no amendment of the original will, Cecil C. Wooten would have taken an equal share with his brothers and sisters and in the same manner as they in the same event would have taken under the will; but his father, for some reason best known to himself, and presumably because of some change in conditions or circumstances, determined to revoke the gift

to his said son, not only in respect of the original share devised to him, but also of any accrued share. In other words, his final will was that Cecil should take nothing whatever in the lands situated in Greene County and described in the tenth item of the will and the first item of the codicil. The opening sentence of the latter clearly manifests this purpose: "It is my will that my son, Cecil C. Wooten, shall have *no interest* in my Greene County lands (describing them), and I do hereby expressly withdraw and recall from my said son, Cecil C. Wooten, the *entire* interest which I devised to him in said Greene County lands in the tenth item of my said will." He then substitutes his other children, by name, for him in the said devise, "subject to the same and identical rights, privileges and provisions, as to survivorship and limitations over, as specifically prescribed and set forth in said tenth item." Language could not be more explicit for conveying the idea that Cecil was to be cut off entirely and completely from any kind of interest or estate in the Greene County land, whether vested or contingent. The testator first declares that "he shall have *no interest*" in the land, but the entire interest so devised to him shall go to his brothers and sisters. He had devised two kinds of interest to him in the tenth item, one directly to him without dependence on the happening of any event, and the other contingent upon any of his other children dying without leaving a child. The latter was an interest, though contingent, and as much so as the original devise to him, which, of course, was vested, and being an interest, he is excluded from any and all right to it by the provision of the codicil that he shall have *no* interest therein formerly devised to him, but the *entire* interest shall go to the others.

We have italicized the important and most significant words. His Honor's construction of the will was, therefore, correct, and we affirm his judgment.

Affirmed.