STROUD, Judge.
 

 Plaintiff-mother appeals an order modifying custody of the parties' daughter by allowing defendant-father to resume visitation with the child several years after a custody order which "immediately and permanently suspended and terminated" all visitation and contact of any sort with defendant-father. Where the trial court made extensive unchallenged findings of fact of the positive changes in Father's life since the prior order and determined these changes justify a modification of custody, the trial court did not abuse its discretion in modifying the custody order
 
 *131
 
 to allow a gradual resumption of visitation with Father.
 

 I. Background
 

 Plaintiff-mother and defendant-father are the parents of Tammy, born in 2004.
 
 [1]
 
 Mother and Father were living together when Tammy was born but stopped living together on 24 September 2005 due to Father's domestic violence. An order was entered in the domestic violence case which granted primary custody of Tammy to Mother and gave Father specific visitation. On 7 December 2005, Mother filed a complaint for custody and child support in this case, alleging Father had committed domestic violence against her, was abusing illegal drugs, and could not control his anger. On 30 January 2006, an order was entered suspending Father's visitation because he had tested positive for use of methamphetamine and marijuana and a referral was made to the Department of Social Services ("DSS").
 

 On or about 27 March 2006, the trial court entered a consent order in the custody case allowing Father to resume visitation. This order noted that Father had repeatedly passed his drug tests but required him to continue drug testing in the discretion of DSS, to meet with DSS personnel by June 2006 to review the case, and urged Father to participate in an anger management course. In April and May, 2007, Father filed motions for modification of visitation alleging that in late March 2007, DSS prevented Father from having any contact with Tammy based upon Mother's report of inappropriate touching of Tammy by Father. Father further alleged DSS had completed its investigation of Mother's report as of 26 April 2007 and he had one visit with Tammy, supervised by his parents, but another report of inappropriate touching was made to DSS on 3 May 2007, ceasing his visitation again.
 

 On 23 August 2007, the trial court entered an order including detailed findings regarding Father's drug abuse and anger issues. In the August 2007 order, the trial court found it had "grave concerns about the Defendant's usage of controlled substances, his anger related issues, and his judgment/decision making process" and ordered that he have no contact with Tammy until he complied with the order's provisions. Father was required to submit to drug testing and could not resume visitation unless he was clean for three consecutive weeks; this order set a review hearing for September 2007. The trial court held a review hearing in September 2007 and entered an order again requiring drug testing and allowing conditional supervised visitation if he was in compliance. Another review order was entered in May 2008 which again required drug testing and further noted that Father could file for a modification after three consecutive weeks of clean drug tests.
 

 In March 2010, Mother filed a motion for modification of custody and emergency relief asking to terminate Father's visitation because he had been charged with felony possession of methamphetamine and other drug-related crimes. Mother alleged Father was not living with his parents, who had supervised his visitation, and was not getting drug tests as ordered. The trial court entered an emergency order suspending Father's visitation. After several continuances, the trial court heard Mother's motion and entered an order in October 2010. The 2010 custody order included detailed findings regarding Father's drug abuse and his guilty plea to some of the criminal charges. The trial court found Father was not a fit and proper person to have visitation or contact of any kind with Tammy. The order granted sole legal and physical custody to Mother and provided
 

 that all visitation(s), association(s), and/or contact(s), including without limitation opportunities for same, of any kind and description, by and between the Defendant and the minor child, [Tammy], shall be and same is/are immediately and permanently suspended and terminated. That, further, neither Defendant nor any person/agent acting on his behalf shall visit, associate with and/or contact, or attempt to visit, associate with and/or contact, in any manner, fashion or way, the minor child or anyone having legal and authorized possession of said child. That any rights, legal or otherwise, of any kind or description that
 
 *132
 
 Defendant heretofore had relative to visiting or having contact, of any kind or description, with the parties' minor child, [Tammy], are hereby and shall be immediately terminated and ended; and, Defendant shall have no further contact of any kind or description with the said child.
 

 In August 2016, Father filed a motion in the cause to modify custody alleging a substantial change in circumstances. Father alleged he had been released from prison in December 2015. While in prison, he had participated in DART, NA, and AA and continued to pay child support. On post-release supervision, all of his drug tests were negative; he was residing with his mother and intended to continue doing so; and he felt remorse for his past decisions. Father asked to resume visitation with Tammy.
 

 Mother filed a response to Father's motion, asking that his motion be "denied" and "dismissed[;]" her response did not cite any specific rule supporting dismissal. In January 2017, the trial court began the hearing on Father's motion for modification but after hearing part of the evidence suspended the hearing and entered an order requiring the parties to participate in a "Best Interest Evaluation" regarding custody and visitation, to be performed by Dr. Jerry Sloan. The custody hearing later resumed and was completed in June 2017.
 

 On 3 August 2017, the trial court entered an order modifying custody. The order includes detailed findings of fact regarding the prior orders and history. Findings 11 through 29 address the substantial changes in circumstances regarding Father's cessation of drug abuse and improvements in problem areas noted in the prior orders. Other findings noted that Mother opposed resumption of visitation and that Mother claimed Tammy did not want to visit with Father and was upset by the prospect of visitation.
 
 [2]
 
 The order allowed Father to resume visitation on a schedule of gradually increasing visitation, starting with supervised visits. The order also required Father to participate in individual, group, and family therapy to address his reintegration into Tammy's life. Mother appeals from the August 2017 order.
 

 II. Denial of Motion to Dismiss
 

 Mother contends that "the trial court erred by not granting plaintiff's Rule 41(b) motion for involuntary dismissal at the close of the defendant's evidence and also at the close of all of the evidence." (Original in first letter caps.) Mother argues that Father's evidence showed no change of circumstances which affects the interests of the minor child because he cannot prove there is any potential benefit to Tammy from a resumption of a relationship with Father.
 

 We first note that because the trial court is the trier of fact in a custody trial, and the trial court is vested with broad discretion in this type of case, our appellate courts generally disfavor dismissal of a custody action under Rule 41(b):
 

 Dismissal under Rule 41(b) is left to the sound discretion of the trial court. In a Rule 41(b) context, the trial judge may decline to render any judgment until the close of all the evidence, and except in the clearest cases, he should defer judgment until the close of all the evidence.
 

 Beck v. Beck
 
 ,
 
 175 N.C. App. 519
 
 , 523,
 
 624 S.E.2d 411
 
 , 414 (2006) (citations, quotation marks, and brackets omitted). Since the trial court must make findings of fact to support an order under Rule 41(b), there is little practical or legal difference between an order
 
 dismissing
 
 a motion to modify custody under Rule 41(b) and an order
 
 denying
 
 a party's claim for modification of custody.
 
 See
 

 Helms v. Rea
 
 ,
 
 282 N.C. 610
 
 , 619,
 
 194 S.E.2d 1
 
 , 7 (1973) ("There is little point in such a motion at the close of all the evidence, since at that stage the judge will determine the facts in any event." (citation quotation marks, and ellipses omitted) );
 
 see also
 

 Hill v. Lassiter
 
 ,
 
 135 N.C. App. 515
 
 , 517-18,
 
 520 S.E.2d 797
 
 , 800 (1999) ("If the trial court grants a defendant's motion for involuntary dismissal, he must make findings of fact and failure to do so constitutes reversible error. Such findings are intended to aid the appellate court by affording it a clear understanding of the basis of the trial court's decision, and to make
 
 *133
 
 definite what was decided for purposes of res judicata and estoppel. Finally, the requirement of findings should evoke care on the part of the trial judge in ascertaining the facts." (citations omitted) ). Whether the trial court is ruling on a motion to dismiss under Rule 41(b) or ruling on the substantive claim for modification of custody, the trial court is doing essentially the same thing; in both instances, the trial court must evaluate the evidence to determine whether the motion to modify custody has merit and must make findings of fact.
 

 On a motion to dismiss pursuant to Rule 41(b), the trial court is not to take the evidence in the light most favorable to plaintiff. Instead, the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him. The trial court must pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from them.
 

 A dismissal under Rule 41(b) should be granted if the plaintiff has shown no right to relief or if the plaintiff has made out a colorable claim but the court nevertheless determines as the trier of fact that the defendant is entitled to judgment on the merits.
 

 Id.
 
 at 517,
 
 520 S.E.2d at 800
 
 (citations and quotation marks omitted).
 

 We review the trial court's denial of Mother's motion to dismiss for abuse of discretion,
 
 see
 

 Beck
 
 ,
 
 175 N.C. App. at 523
 
 ,
 
 624 S.E.2d at 414
 
 , and we also review the trial court's determination of the motion to modify custody for abuse of discretion.
 
 See generally
 

 Shipman v. Shipman
 
 ,
 
 357 N.C. 471
 
 , 474,
 
 586 S.E.2d 250
 
 , 253 (2003) ("Our trial courts are vested with broad discretion in child custody matters."). Since we must consider the trial court's findings of fact and conclusions of law to review both issues, we will proceed to address the substantive issue of modification of custody.
 

 III. Modification of Custody
 

 Mother contends the trial court erred in determining there was a substantial change of circumstances to justify the modification of custody. In
 
 Shipman
 
 , our Supreme Court stated that "[i]t is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody."
 
 Id.
 
 at 473,
 
 586 S.E.2d at 253
 
 (citations and quotation marks omitted). The change in circumstances may have either an adverse or beneficial effect on the child.
 
 See
 

 id.
 
 at 473-74,
 
 586 S.E.2d at 253
 
 ("The party seeking to modify a custody order need not allege that the change in circumstances had an adverse effect on the child. While allegations concerning adversity are acceptable factors for the trial court to consider and will support modification, a showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody." (citations, quotation marks, and brackets omitted) ). The trial court must first determine if there has been a substantial change in circumstances and if so, the trial court must consider the effect on the child and if a modification is in the child's best interests:
 

 As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests. Therefore, if the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests.
 

 The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered. If, however, the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether
 
 *134
 
 a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.
 

 Id.
 
 at 474,
 
 586 S.E.2d at 253
 
 (citations omitted).
 

 We review an order for modification of custody to determine if the findings of fact are supported by substantial evidence and if the conclusions of law are supported by the findings; the trial court determines the credibility and weight of the evidence.
 
 See
 

 id.
 
 at 474-75,
 
 586 S.E.2d at 253-54
 
 ("When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges. Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary." (citations and quotation marks) ). If the findings of fact and conclusions of law are supported, then we review the trial court's decision regarding custody for abuse of discretion.
 
 See generally
 

 id
 
 . at 474,
 
 586 S.E.2d at 253
 
 .
 

 A. Findings of Fact and Conclusions of Law
 

 Mother challenges only two of the trial court's findings of fact as unsupported by the evidence, numbers 58 and 60:
 

 58. That there has been a substantial and material change in circumstances warranting the court in modifying the previous order of this court.
 

 ....
 

 60. That the Defendant is a fit and proper person to have visitation with the minor child and it is in the best interests of and will best promote the general health, education and welfare of the minor child that she have visits with the Defendant.
 

 All of the other findings of fact are binding upon this Court.
 
 See
 

 In re S.C.R.
 
 ,
 
 198 N.C. App. 525
 
 , 532,
 
 679 S.E.2d 905
 
 , 909 (2009) ("[T]he trial court's findings of fact to which an appellant does not assign error are conclusive on appeal and binding on this Court."). Mother also challenges two of the trial court's conclusions of law:
 

 2. There has been clear and convincing evidence of a substantial and material change in circumstances warranting the court in modifying the previous order of this court as outlined hereinbelow.
 

 ....
 

 4. That the Defendant is a fit and proper person to have the visitation with the minor child and it is in the best interests of and will best promote the general health, education and welfare of the minor child that she have visits with the Defendant.
 

 In reality, these "findings of fact" and "conclusions of law" say the same thing and are best characterized as conclusions of law.
 
 See
 

 In re Everette
 
 ,
 
 133 N.C. App. 84
 
 , 85,
 
 514 S.E.2d 523
 
 , 525 (1999) ("[A]ny determination requiring the exercise of judgement, or the application of legal principles is more properly classified as a conclusion of law.") Further,
 

 [t]he labels "findings of fact" and "conclusions of law" employed by the trial court in a written order do not determine the nature of our review. If the trial court labels as a finding of fact what is in substance a conclusion of law, we review that "finding"
 
 de novo
 
 .
 

 Westmoreland v. High Point Healthcare, Inc.
 
 ,
 
 218 N.C. App. 76
 
 , 79,
 
 721 S.E.2d 712
 
 , 716 (2012) (citations omitted).
 

 Although Mother did not challenge the trial court's findings of fact regarding the positive changes in Father and his life, her argument asks this court to reweigh the evidence, but we do not have this authority.
 
 [3]
 

 *135
 
 For example, Mother argues that Father's "evidence in this case does not eliminate anger issues from his lifestyle and does not equate to a substantial change in circumstance" and that Father may have been lying about his abstinence from drugs and alcohol. But the trial court found that Father completed the DART program; took various educational classes; consistently passed drug tests; stopped consuming drugs and alcohol; regularly attended church and participated in community service projects; became a member of a volunteer fire department; paid child support from his disability payment; did not have "any dealings with any of his pre-incarceration associates[;]" and lives with his mother who is a registered nurse. The trial court also made findings regarding defendant's love for his child and desire to be involved in her life in a positive manner. None of these findings of fact were challenged as unsupported by the evidence. The trial court assessed the credibility of Father's evidence regarding his cessation of drug abuse and changes to the problems in his life which led to his loss of visitation originally and determined that his evidence was convincing.
 

 B. Effect on the Child's Welfare
 

 Mother argues that "even if there was a change in circumstances [Husband] has failed to show that it has affected [Tammy's] welfare." (Original in first letter caps.) Mother contends that even if Father has reformed, Father cannot show that his sobriety and stability will have a beneficial effect on Tammy. We addressed a similar argument in
 
 Shell v. Shell
 
 , where the mother lost custody of the children because of her substance abuse, unstable housing, and failure to provide a safe home for the children.
 
 See
 

 Shell v. Shell
 
 , --- N.C. App. ----, ----,
 
 819 S.E.2d 566
 
 , 569 (2018). Four years later, the trial court determined that the positive changes in her life were substantial changes in circumstances affecting the welfare of the children and modified the custody order.
 
 See
 

 id.
 

 at ----,
 
 819 S.E.2d at 569-70
 
 . On appeal, the father argued that the mother's positive changes did not affect the welfare of the children:
 

 Father also contends that even if Mother's sobriety is a change of circumstances, it has no effect on the children. This argument is difficult to understand, since Father contended-quite correctly-in 2012 that Mother's substance abuse was still having detrimental effects on the children, even after she had been sober for a few months. Her life was still unstable, even if she was not actively using drugs or alcohol. Considering the other findings in the order regarding the positive changes in Mother's life which have accompanied her sobriety, this argument is entirely without merit. The trial court's order includes many findings detailing these effects-Mother's involvement with the children, her ability to provide a home and support them, and her becoming a caring parent instead of a selfish and unreliable one.
 

 Id.
 

 at ----,
 
 819 S.E.2d at 571-72
 
 (citation omitted).
 

 Here too, the trial court made findings regarding many positive changes in Father's life and determined that Tammy would benefit from resumption of her relationship with him. In any order changing a custodial schedule, to some extent the trial court must predict the effect the change will have on the child, especially when a parent has had no contact with the child for an extended period of time. Before Tammy resumes a relationship with Father, no one can know exactly how it will affect her, but based upon the trial court's findings of fact, the trial court did not abuse its discretion by concluding that Father's positive changes are beneficial for Tammy.
 

 C. Best Interests
 

 Mother also contends that "even if there was a change in circumstances which affected the welfare of [Tammy], there is
 
 *136
 
 insufficient evidence to support a finding that modifying the custody order by granting [Father] visitation with [Tammy] is in the child's best interest." (Original in first letter caps.) This argument is similar to the last but is based primarily upon Mother's evidence of Tammy's negative emotions and behaviors since finding out Father may be returning to her life. The trial court did not overlook these concerns but made findings of fact about them and addressed them by ordering a gradual resumption of visitation and requiring Father to participate in individual and joint therapy to assist in this transition. A child's potential difficulty in resuming a relationship with a parent who has been absent from her life does not mean that the trial court cannot order a resumption of visitation. Even if Tammy stated a desire not to resume a relationship with Father, the trial court does not have to accede to her wishes.
 
 See
 

 Mintz v. Mintz
 
 ,
 
 64 N.C. App. 338
 
 , 340-41,
 
 307 S.E.2d 391
 
 , 393 (1983) ("If the child is of the age of discretion, the child's preference on visitation may be considered, but his choice is not absolute or controlling."). The trial court did not abuse its discretion in concluding it is in Tammy's best interests to resume visitation with Father.
 

 IV. Conclusion
 

 We affirm.
 

 AFFIRMED.
 

 Judges DIETZ and MURPHY concur.
 

 [1]
 

 A pseudonym is used to protect the identity of the minor involved.
 

 [2]
 

 Tammy testified in chambers, and there is no record of her testimony.
 

 [3]
 

 The trial court here even concluded there was "clear and convincing evidence" of the substantial change in circumstances, although only a preponderance of the evidence is required.
 
 See
 

 Speagle v. Seitz
 
 ,
 
 354 N.C. 525
 
 , 533,
 
 557 S.E.2d 83
 
 , 88 (2001) ("[T]he applicable standard of proof in child custody cases is by a preponderance, or greater weight, of the evidence."). Although the higher standard of proof was not required,
 
 see generally
 

 id.
 

 , the trial court did not err by noting its analysis of the weight of the evidence.